UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SCOTT AIR FORCE BASE PROPERTIES, LLC,

    Plaintiff,

  v.

COUNTY OF ST. CLAIR, ILLINOIS,

    Defendant.

Case No. 07-cv-773-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant County of St. Clair, Illinois's Motion to Dismiss (Doc. 6). Plaintiff Scott Air Force Base Properties, LLC has replied (Doc. 13). The time for further filings has passed. Because the Court lacks jurisdiction over the subject matter of the dispute, it GRANTS the Motion to Dismiss.

### BACKGROUND

In 1996, Congress passed the Military Housing Privatization Initiative (MHPI), aimed at attracting private capital and expertise to build much needed military-family housing in a quick and cost effective manner. Under the MHPI, private developers submit competitive bids for housing development projects. For a nominal fee, the federal government leases to the winning bidder the land on which the new developments will be constructed via a long term (usually 50 year) lease. Ownership of the newly constructed housing units, however, is vested in the private developer, not the federal government. The federal government retains a reversionary interest in the units at the expiration of the lease. The cost of construction of the units is borne by the private developers, who recoup their investment by collecting "rent" on the units in the form of the Basic Allowance for Housing (BAH) allotted to the military tenants of the units. Under the

MHPI, the federal government obtains much needed new construction with little to no initial capital outlay, while the private development companies get a steady stream of tenants and reliable monthly payments. The MHPI seems like a rare win-win situation. However, because ownership of the land is still vested with the federal government while ownership of the units is vested in the private developers, questions of whether state and local *ad valorem* taxes may be levied on the units have arisen all across the country. The instant suit raises just such a question.[1]

Scott Air Force Base Properties, LLC (Scott) submitted a proposal to the Secretary of the Air Force (Government) and was awarded a contract to build new housing on Scott Air Force Base (AFB) pursuant to the MHPI. The Government leased Scott land located inside AFB and executed a quit claim deed to Scott of the improvements thereon. The lease provided Scott the right to contest taxes, assessments and similar charges and to assert any exemption that may be available with respect to assessments or charges. The Government specified that nothing in the lease should be construed as a waiver of sovereign immunity. Scott recorded a memorandum of the lease and quit claim deed with the St. Clair County Recorder of Deeds on January 3, 2007. In June 2007, St. Clair County (the County) placed Scott's leasehold interest on the tax assessment rolls, assessing the two parcels, for *ad valorem* tax purposes, at more than $31 million.

Scott contends that the *ad valorem* tax is improper because the property is part of a federal enclave subject to exclusive federal jurisdiction and the federal government has not

---

[1] For an excellent overview of the history and tax implications of the MHPI, see Phillip D. Morrison, *State Property Tax Implications for Military Privatized Family Housing Program*, 56 A.F. L. Rev. 261, 261 (2005).

2

expressly consented to the taxation of the leasehold. Therefore, under the Supremacy Clause of the Constitution, as well as both Illinois and federal law, the leasehold, as federal property, is exempt from state taxation. Scott brought this Declaratory Judgment action seeking a declaration that: 1) all transactions entered into under the MHPI are exempt from state taxation and 2) Scott's leasehold under the MHPI is not subject to *ad valorem* taxation by the County in its capacity as taxing agent under the laws of the State of Illinois. The County filed this Motion to Dismiss asserting that the Court does not have jurisdiction over the action because there is no "case or controversy" within the meaning of Article III of the Constitution and because the Tax Injunction Act strips the Court of its jurisdiction. The County also contends that Scott has failed to state a claim for which relief can be granted.

## ANALYSIS

### I. Tax Injunction Act

Title 28 U.S.C. § 1341 provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state." Federal courts will abstain from actions seeking declaratory relief against state taxes when "there is a plain, adequate and complete remedy available in the state courts." *Gray v. Morgan*, 371 F.2d 172, 174 (7th Cir. 1966). "The mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States." *Great Lakes Dredge and Dock Co. v. Huffman*, 319 U.S. 293, 298 (1943).

Therefore, the argument by Scott that the County's imposition of an *ad valorem* tax is unconstitutional because it violates the Supremacy Clause cannot, by itself, constitute grounds

3

for bringing the instant declaratory judgment action in federal rather than state court, so long as Illinois offers a plain, adequate and complete remedy.

### A. Plain, Speedy, Efficient State Remedy Available

Illinois law provides a plain, adequate and complete remedy via the procedures and rules established by the Illinois Property Tax Code governing the application for tax-exempt status. 35 ILCS 200/15 *et seq*. By following the procedures outlined in the Illinois Property Tax Code, Scott will be provided the right to a full hearing and an administrative decision, which, if necessary, may be appealed to the Illinois circuit court for St. Clair County, higher state courts, and eventually, the United States Supreme Court. 35 ILCS 200/16-70; 35 ILCS 200/18-40. Erroneous assessments will be abated, and erroneously paid taxes will be refunded. *Id*.

Illinois law exempts from taxation all property of the United States "except such property as the United States has permitted or may permit to be taxed." 35 ILCS 200/15-50. Taxpayers granted the exemption reserved for property of the United States need not reapply or recertify their tax exempt status until and unless there is a later change in use or ownership of the property. 35 ILCS 200/15-10(3).

Therefore, Scott's contentions that the property at issue remains the property of the United States and that the United States has not consented to taxation of the property are fully capable of being raised and ruled on in the Illinois system. Furthermore, if Scott's contentions are correct, Scott's remedy will be complete. It will not be required to pay the *ad valorem* tax, any taxes paid will be refunded, and its tax-exempt status will continue undisturbed year after year. As Scott has a plain, speedy, and efficient state remedy available to it, under the Tax Injunction Act, it appears the Court has no jurisdiction over this case.

**II.     Action Non-Justiciable if Severed from Request for Tax Injunction**

Scott attempts to overcome the proscription of the Tax Injunction Act by asserting that it does not ask the Court to enjoin, suspend or restrain the County in its assessment, levy and collection of an *ad valorem* tax.  Rather, Scott contends, it asks only for the Court's interpretation of the MHPI, a federal statute.  Generally, of course, the proper construction of a federal statute presents a question "eminently suitable to resolution in federal court." *Massachusetts v. E.P.A.,*__ U.S. ___, 127 S.Ct. 1438, 1452 (2007).  Likewise, the fact that Scott asks for relief in the form of a declarative judgment does not prevent the claim from being one properly heard by the federal courts.  28 U.S.C. § 2201.

**A.     Case or Controversy Requirement**

The Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201, states, in pertinent part: "In a case of actual controversy within its jurisdiction. . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id*.

However, a court may not use its discretion to issue a declaration under the Act where there is no "actual controversy" between the parties. *Id.* The Act's language "tracks the 'cases' or 'controversies' requirement of Article III, [and] saves the statute from unconstitutionally expanding the federal courts' jurisdiction." *Deveraux v. City of Chicago*, 14 F.3d 328, 330-31 (7th Cir. 1994) (internal quotations omitted).

The exercise of judicial power under Art. III of the Constitution depends on the existence

5

of a case or controversy, and "a federal court [lacks] the power to render advisory opinions." *U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America*, 508 U.S. 439, 446 (1993) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). The "case or controversy" requirement protects the principle of separation of powers and properly limits the role of the judiciary in a democratic society. *Allen v. Wright*, 468 U.S. 737, 750 (1984).

"[T]his case and controversy requirement is often referred to as the concept of justiciability. Justiciability thus sets apart "cases" and "controversies"-disputes that "are appropriately resolved through the judicial process"-from those situations that are not properly resolved through the exercise of judicial authority." *O'Sullivan v. City of Chicago,* 396 F.3d 843, 853 (7th Cir. 2005) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The element of standing is central to the idea of justiciability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing only if he can show that he has suffered an injury in fact that is fairly traceable to the challenged action of the defendant and which will likely, not merely speculatively, be redressed by a favorable decision. *Id*. at 560-61. "[This] tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

Here, the injury suffered by Scott that gives it standing to bring this suit is not the County's construction of the MHPI, but the County's assessment of the *ad valorem* tax. The nature of the injury calls into play the Tax Injunction Act, but if the Court were to sever this action from the tax assessment injury, as Scott suggests, then Scott has suffered no injury, and

6

the action would be non-justiciable as a request for an advisory opinion.

Additionally, Scott does not have standing to ask the Court to construe the MHPI because such a declaration will not redress Scott's injury. Scott asks the Court for a declaration that the MHPI forbids the assessment of property taxes by states. But, even if the Court found that the MHPI does not contain an express grant of consent to state taxation, that would not necessarily mean that the United States had not consented to state taxation in some other way. For example, the original cession of the land to the United States from the state may have contained a provision consenting to taxation for long term leases. *See Atlantic Marine Corp Commun. v. Onslow County, N.C.*, 497 F.Supp.2d 743 (E.D.N.C. 2007). The lease itself may contain language resulting in a consent to taxation. Or the United States may have consented to taxation through some statute at work other than the MHPI. *See, e.g. Ben Lomond, Inc. v. Fairbanks North Star Borough Bd. of Ed.*, 760 P.2d 508 (Alaska 1988) (interpreting 10 U.S.C. § 2667 as granting express consent to state taxation of military housing units).[2] The Court could construe the MHPI in the manner urged by Scott and still leave Scott's injury unredressed, because a declaration that express consent to state taxation does not come from the MHPI is not equivalent to a declaration that Scott is entitled to tax-exempt status.

In order for the instant action to be justiciable, it must be placed in the proper context, that is, as an action for a declaratory judgment that the County may not assess, levy or collect *ad valorem* taxes on Scott's MHPI housing units located on Scott AFB. As examined above, the Tax Injunction Act compels the Court to abstain from such an action.

---

[2] These hypothetical scenarios clearly illustrate that Scott's contention that the resolution of this dispute requires only an interpretation of the MHPI and does not require the Court to interpret state law or make factual findings is simply not the case.

## CONCLUSION

For the foregoing reasons, the Court finds it does not have subject matter jurisdiction over this action, and **GRANTS** the County's Motion to Dismiss (Doc. 6).


**IT IS SO ORDERED.**
**DATED: January 29, 2008**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**